**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-0826-WJM

TANYA R. WOLF,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

**ORDER AFFIRMING ADMINISTRATIVE LAW JUDGE'S DENIAL OF BENEFITS**

---

This matter is before the Court on review of the Commissioner of Social Security's decision to deny Plaintiff's application for disability insurance benefits and supplemental security income benefits. The Plaintiff filed an Opening Brief (ECF No. 15), the Commissioner filed a Response (ECF No. 18), and Plaintiff filed a Reply (ECF No. 19). After reviewing the briefs and administrative record filed with the Court, the Commissioner's decision to deny Plaintiff's application for Social Security disability insurance benefits and supplemental security income benefits is affirmed.

## I. BACKGROUND

Plaintiff was born on June 16, 1977. (Record ("R.") (ECF No. 12) at 170.) Plaintiff's medical records indicate she has been diagnosed with several mental and physical conditions, including bipolar disorder, post-traumatic stress disorder, episodic alcohol abuse, back pain, bilateral knee pain, and migraines. (R. at 345, 355, 365, & 372). Plaintiff alleges a disability onset date of December 31, 2008. (*Id*. at 74.)

Plaintiff has past relevant work as a front desk receptionist, certified nursing assistant, and waitress. (*Id*. at 22.)

Plaintiff's application for disability insurance benefits was initially denied on May 27, 2011 by Administrative Law Judge Peggy Ball ("the ALJ"). (*Id*. at 85.) Plaintiff appealed to the Social Security Appeals Council which remanded the case for another hearing. (*Id*. at 90-92.) The Appeals Council ordered the ALJ to further evaluate Plaintiff's mental impairments and to reassess Plaintiff's Residual Functional Capacity ("RFC"). (*Id*.) On September 25, 2012, the ALJ again denied Plaintiff's application for benefits. (*Id*. at 23.) The Appeals Council affirmed. (*Id*. at 1-3.)

In her September 25, 2012 decision, the ALJ found that Plaintiff was not "under a disability, as defined in the Social Security Act, from [the alleged onset date] December 31, 2008, through the date of this decision." (*Id*. at 23.) The ALJ made the following findings of fact and conclusions of law in accordance with the Commissioner's five-step sequential evaluation process.[1] At step one, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since the alleged onset date of December 31, 2008. (*Id*. at 12.) At step two, the ALJ held that Plaintiff had the following severe impairments: mild arthritic changes in the knees, an affective disorder (variously described as a bipolar disorder or an unspecified episodic mood disorder), post-

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

traumatic stress disorder, a personality disorder, borderline personality disorder, and episodic alcohol use. (*Id*. at 12-13.) At step three, the ALJ held that Plaintiff's impairments do not meet or equal the severity of the established listing of impairments under the governing regulations. (*Id*. at 13.) The ALJ then analyzed Plaintiff's RFC, concluding that Plaintiff:

> has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that [she]: can only occasionally stoop, kneel, crouch or crawl; must avoid exposure to extremely cold or humid conditions or poorly ventilated areas; requires work with an SVP of less than or equal to 3, requiring the claimant to understand, remember and carry out simple instructions but not complex or detailed instructions; and must not be required to engage in face-to-face interaction with the general public more than 75 percent of the day.

(*Id*. at 15.) The ALJ then ruled at step four that Plaintiff was unable to perform any past relevant work. (*Id*. at 22.) However, considering the RFC assessment described above, along with Plaintiff's age, education, and work experience, at step five the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id*.) Those jobs include merchandise distributor, silverware wrapper, and order filler. (*Id*. at 23.)

On March 20, 2014, Plaintiff initiated this action challenging the ALJ's September 25, 2012 denial of benefits, which is now before the Court. (ECF No. 1.)

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

Plaintiff raises the following arguments on appeal: (1) the ALJ improperly rejected the treating source opinion of Cynthia Jimenez, LCSW; (2) the ALJ's RFC finding was not supported by substantial evidence; (3) the ALJ's RFC finding is not stated on a function-by-function basis; and (4) the ALJ did not make a proper credibility finding with respect to Plaintiff's testimony. (ECF No. 15 at 19-20.) The Court considers each of Plaintiff's arguments below.

**A.     Opinion of Cynthia Jimenez, LCSW**

Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating mental health counselor, Cynthia Jimenez. (*Id*. at 24.) Although Ms. Jimenez opined in her RFC analysis that Plaintiff has multiple marked to extreme mental impairments, the ALJ assigned her opinion no weight because it was "discrepant with the GAF scores that predominate within the evidence . . . and is inconsistent with her own treatment records, documenting situational stressors rather than clinical signs of depression,

mania, anxiety or other decompensation." (R. at 20.)

In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (internal quotations omitted). The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301 (quotation marks and brackets omitted).

The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). However, an ALJ may disregard that opinion if it is contradicted by other medical evidence, or is otherwise inconsistent with substantial evidence in the record. *See Marshall v. Astrue*, 315 F. App'x 757, 759-60 (10th Cir. 2009); 20 C.F.R. § 404.1527(c)(2). The analysis of how much weight to accord a treating source opinion is

sequential:

> An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing Social Security Ruling ("SSR") 96-2p, 1996 WL 374188 (July 2, 1996)). A finding that a treating doctor's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

Plaintiff argues that the ALJ improperly relied solely on the GAF scores that conflicted with Ms. Jimenez's opinion while ignoring the others. (ECF No. 15 at 27-28.) Ms. Jimenez treated Plaintiff over a four-year span from September 2008 through September 2012. (R. at 56, 414-453, 462.) In her RFC analysis, Ms. Jimenez diagnosed Plaintiff with post-traumatic stress disorder and recurrent major depression. (*Id*. at 462.) Ms. Jimenez also noted that Plaintiff had several marked to extreme limitations with regard to understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (*Id*. at 462-63.)

However, the ALJ consulted other treatment records from 2008 through the date of her decision that conflict with Ms. Jimenez's assessment. For example, the ALJ

noted that on October 16, 2008, two months before Plaintiff's alleged onset date, Plaintiff's treating psychiatrist, Steven Martin, M.D., of Front Range Psychiatric Associates, P.C., assigned Plaintiff a GAF score of 65 indicating only mild symptoms.[2] (*Id*. at 15-16, 298.) Plaintiff later obtained treatment from psychiatrist Dr. Tycner, also of Front Range Psychiatric Associates, P.C., who gave Plaintiff varying GAF scores of 55, 65, 68, 70, and 75 from December 28, 2009 through July 29, 2010. (*Id*. at 390-397.) All of these GAF scores fall within the moderate to slight range.

The Court notes that Plaintiff was evaluated by psychologist Richard Madsen, M.D., and received counseling from Nicholas Rodriguez, LCSW. (*Id*. at 355, 455-57, & 533-34.) On two separate occasions, October 26, 2009 and May 4, 2012, Dr. Madsen opined that Plaintiff's GAF score was 50, which indicates "serious symptoms." (*Id*. at 355, 531.) Mr. Rodriguez also assessed a GAF score of 50 on July 10, 2008. (*Id*. at 456.) Nonetheless, the Court finds that substantial record evidence exists to support the ALJ's statement that Ms. Jimenez's opinion was "discrepant with the GAF scores that predominate within the evidence" because while these GAF scores reflected serious symptoms, many others did not. (*Id*. at 20.)

---

[2] GAF scores are a subjective determination based on a scale of 100 to 1 that assess an "individual's overall level of functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004). "A GAF score of 41–50 indicates [s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning, such as inability to keep a job." *Id*. (quotation marks omitted). "The GAF definition of range 51–60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning; and the definition of range 61–70 indicates mild symptoms or some difficulty in social, occupational, or school functioning." *Bronson v. Astrue*, 530 F.Supp.2d 1172, 1181 (D. Kan. 2008). "A GAF score of 71–80 indicates: If symptoms are present, they are transient and expectable reactions to psychosocial stressors (e.g., difficulty concentrating after family argument); no more than slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork)." *Vititoe v. Colvin*, 549 F. App'x 723, 726 n.2 (10th Cir. 2013) (quotation marks omitted).

As discussed in greater detail below, Plaintiff's GAF scores were only one component of Plaintiff's medical records that the ALJ considered in formulating her RFC. (*Id*. at 15-21.) An ALJ may properly consider GAF scores in fashioning her opinion, even though GAF scores are not, standing alone, determinative of disability. *Petree v. Astrue*, 260 F. App'x 33, 42 (10th Cir. 2007) (noting that "a low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record"). The ALJ therefore properly considered Plaintiff's GAF scores in connection with the remaining record.

Plaintiff further argues that Ms. Jimenez's records do not contain inconsistencies because although Plaintiff's medical records might document situational stressors, Plaintiff's mental impairments did not end once those stressors were relieved. (ECF No. 15 at 29.) There is evidence in Ms. Jimenez's treatment records that Plaintiff's interaction with her mother and other relatives resulted in recurring situational stressors. (R. at 414-452; 535-545.) Plaintiff reported distress, anxiety, and other mental stressors related to (1) the unexpected death of her mother; (2) arguments with her mother; (3) her role as her father's care giver; (4) parenting her children; (5) her relationship with her boyfriend; and (6) interaction with her siblings. (*Id*.) However, there is also some evidence that Plaintiff's mental impairments improved following these incidents. Ms. Jimenez noted the following during her March 9, 2009 session with Plaintiff:

> Today, [Plaintiff] states that things have been pretty rough the week before, she is a little better now. . . . She became very angry, upset with her boyfriend because she felt like he was telling her that he was tired of her and he wanted her to leave when actually he was telling her that he

> did not want her to get into an argument with her mom. She overreacted to this, became very angry, reports she hid her keys and then took 10 of one of her medications. . . . She also reported continued conflict between her and her mother. . . . We also processed today her feelings of being suicidal earlier in the week. She . . . states that the feelings passed, she was just feeling overwhelmed and not really sure what to do next. In general, admits that part of the factor was not wanting to return back to her mother's home.

(*Id*. at 447-48.) The Court therefore finds that substantial evidence exists to support the ALJ's conclusion that Ms. Jimenez's treatment records document Plaintiff's history of situational stressors rather than clinical signs of depression, mania, anxiety or other decompensation. (*Id*. at 21, 414-454, & 462.) The Court further finds that the ALJ properly considered the degree to which Plaintiff's mental impairments were caused by situational stressors in reviewing Ms. Jimenez's records as a whole. *See Lopez v. Barnhart*, 78 F. App'x 675, 678 (10th Cir. 2003).

For the reasons above, the Court finds that the ALJ did not improperly reject the opinion of Cynthia Jimenez and that substantial evidence supported the ALJ's findings in this regard. The Court further finds that the ALJ did not substitute her opinion for that of Ms. Jimenez, as Plaintiff argues. (ECF No. 15 at 19.) The record indicates that the ALJ properly considered the relevant factors contained in 20 C.F.R. § 404.1527 including the consistency between the opinion at issue and the record as a whole.

**B.      The ALJ's RFC Finding**

Plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence. (ECF No. 15 at 19.) The ALJ found that Plaintiff has the RFC to perform "light work" as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that, among other restrictions, Plaintiff requires work with an SVP of less than or equal

to 3 and must not be required to interact with the general public more than 75 percent of the day. (R. at 15.) Plaintiff argues the ALJ did not state what evidence she relied on in formulating this RFC, specifically the finding that Plaintiff can interact with the public for up to 75 percent of the day. (ECF No. 15 at 32-34.)

"[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The Tenth Circuit has "reject[ed] [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category." *Id*. In fact, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). The RFC must be based on all the relevant evidence in the case record, but ultimately "[t]he regulations provide that the final responsibility for deciding [this issue] is reserved to the Commissioner." SSR 96-5p, 1996 WL 374183, at * 2 (July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

The ALJ's decision is supported by substantial evidence in Plaintiff's treatment records. The ALJ noted that two months before Plaintiff's alleged onset date, Dr. Martin gave Plaintiff a GAF score of 65. (R. at 15-16, 298.) Plaintiff's thinking, thought content, sensorium, and memory were either intact or normal at that time. (*Id*. at 298.) Dr. Martin made substantially the same findings during a follow-up visit on February 25, 2009. (*Id*. at 296.) All of Dr. Tycner's GAF scores from December 28, 2009 through July 29, 2010 fell within the moderate to slight range. (*Id*. at 390-397.) Dr. Tycner

found during the majority of these visits that Plaintiff's mental assessments were normal and that she was either stable or improved. (*Id*.) From November 29, 2010 through April 23, 2012, Plaintiff sought mental health counseling from psychiatrist Andrea Sciammarella, M.D. (*Id*. at 465-470, 516-527.) On January 10, 2011, Dr. Sciammarella noted that Plaintiff's mood was euthymic, that she was "doing quite well" on medication, she was sleeping well, she was fully oriented, and that no psychosis or suicidal ideation were present. (*Id*. at 467.) Dr. Sciammarella echoed these findings during follow-up visits on April 27, 2011, September 13, 2011, and April 23, 2012. (*Id*. at 516-525.)

The April 25, 2012 consultative psychiatric evaluation by Terry Jones, M.D. also supports the ALJ's finding. Dr. Jones found that Plaintiff's memory, mood, range of affect, and concentration were within normal limits, she was cooperative, and her speech was logical and organized. (*Id*. at 477-480.) Dr. Jones also found that Plaintiff's mental impairments would only mildly affect her ability to interact appropriately with supervisors, co-workers, and the public, or limit her ability to respond to changes in a routine work setting. (*Id*. at 475.) The ALJ gave Dr. Jones's findings great weight and stated that his evaluation was consistent with other evidence in the record indicating that Plaintiff's symptoms are controlled with treatment. (*Id*. at 21.)

Substantial evidence supports the ALJ's additional finding that Plaintiff's complaints of back, neck, and ankle pain were unsubstantiated. (*Id*. at 18-21.) The ALJ cited Plaintiff's treatment records at Pueblo Community Health Center from to May 2008 through March 2011 which are largely devoid of any mention of Plaintiff's back, neck, or ankle pain. (*Id*. at 18, 303-320, 398-413.) When Plaintiff did complain about

her knees buckling, Richard King, M.D., of Pueblo Heath Center noted that Plaintiff was "just a little weak in her muscles" and that there was not "a neurologic thing going on here causing this." (*Id*. at 509.) Dr. King similarly found that Plaintiff's back pain did not affect her range of motion, which was "pretty normal" when she worked through the pain. (*Id*. at 400.) The ALJ also gave great weight to the opinion of consultative examiner Raymond Hilty, M.D., who found that Plaintiff's maximum sitting, standing and walking capacity was up to six hours, and that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. (*Id*. at 20, 348-49.) Dr. Hilty further found that Plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl despite some pain associated with such movements. (*Id*. at 349.) The ALJ found Dr. Hilty's opinion to be particularly credible given the lack of objective evidence in the record supporting Plaintiff's claims of physical impairments. (*Id*. at 20.)

The Court finds that the foregoing findings provide substantial evidence to support the ALJ's determination that Plaintiff's mental and physical impairments did not render her disabled and that she has the RFC to perform light work with certain restrictions. (*Id*. at 15.) The Court further finds that the ALJ properly incorporated Plaintiff's mental impairments and ability to cope with stress into her RFC finding by limiting Plaintiff to work with an SVP of less than or equal to 3, which requires the ability to understand, remember and carry out simple instructions, and by limiting her interaction with the general public to no more than 75 percent of the day. (*Id*.) While the ALJ does not appear to have linked her finding regarding Plaintiff's ability to engage the public for 75 percent of the day to any particular medical opinion in the record, the

regulations do not require her to do so. *Chapo*, 682 F.3d at 1288. Therefore, because the ALJ's findings were based on substantial evidence and a review of the record as a whole, the Court will not disturb those findings here. *Lax*, 489 F.3d at 1084 ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's") (citation and quotation marks omitted).

**C.     The Form of the RFC**

Plaintiff contends that the ALJ erred in failing to consider all of Plaintiff's limitations on a function-by-function basis. (ECF No. 15 at 20.)

As a general rule, an "RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).

The function-by-function assessment requires the ALJ to separately address:

> [A]n individual's limitations and restrictions of physical strength and . . . the individual's remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately . . . even if the final RFC assessment will combine activities . . . . It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work.

*Id.* at *5. The RFC must also address all of the plaintiff's nonexertional capacities, including mental impairments. *Id*. at *6. Yet the Tenth Circuit has held that an ALJ's

evaluation of the evidence and narrative discussion may satisfy SSR 96-8p even though the RFC lacks an explicit function-by-function analysis. *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014).

The ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except that she "can only occasionally stoop, kneel, crouch or crawl; must avoid exposure to extremely cold or humid conditions or poorly ventilated areas; requires work with an SVP of less than or equal to 3." (R. at 15.) The ALJ discussed Plaintiff's nonexertional capacities, such as her mental impairments, at length, which the ALJ determined warranted an SVP level of three and limited interaction with the general public. (*Id.*) Great weight was given to Dr. Hilty's opinion regarding Plaintiff's ability to lift, stand, sit, reach, handle objects, stoop, kneel, crouch and crawl. (*Id.* at 20.) The ALJ also discussed the records from Pueblo Community Health Center in fashioning her RFC determination that limited Plaintiff to only occasional stooping, kneeling, crouching or crawling. (*Id.* at 15.) Furthermore, as discussed below, the ALJ properly discounted Plaintiff's testimony as to her mental and physical impairments based on its inconsistency with other substantial record evidence.

Thus the ALJ explicitly cited the evidence in the record in her narrative discussion of Plaintiff's exertional and nonexertional capacities, and the Court finds that the ALJ's RFC determination, in conjunction with her analysis that followed, satisfied SSR 96-8p despite the lack of an explicit function-by-function analysis. Thus, the Court rejects Plaintiff's argument that the ALJ committed reversible error by failing to discuss Plaintiff's limitations on a function-by-function basis.

Plaintiff also objects to the ALJ's hypothetical questions posed to the vocational

expert during the hearing.  (ECF No. 15 at 42.)  The ALJ asked the vocational expert what work a hypothetical person similar in age, education, and work experience to the Plaintiff, with substantially the same limitations contained in the ALJ's RFC finding, might be able to perform.  (*Id*. at 63-64.)  Plaintiff argues that the vocational expert was left to speculate as to the amount of standing, sitting, and lifting that Plaintiff could do because the RFC analysis was not stated on a function-by-function basis in the ALJ's decision and in the hypothetical question posed to the vocational expert.  (ECF No. 15 at 42.)  According to Plaintiff, this "approach delegated to the vocational expert the job of determining [P]laintiff's specific functional capacities for sitting, standing, and lifting." (*Id*.)

"Whenever a claimant's residual functional capacity is diminished by both exertional and nonexertional impairments, the [Commissioner] must produce expert vocational testimony or other similar evidence to establish the existence of jobs in the national economy."  *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir. 1991). "[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision."  *Id.* at 1492.

While the Court acknowledges that an ALJ may not delegate his or her fact finding responsibility to the testifying vocational expert, that did not occur here.  The ALJ asked the vocational expert what jobs a hypothetical person with Plaintiff's RFC would be able to perform.  The Court has already found that substantial evidence supports the ALJ's determination that Plaintiff's physical limitations lacked objective evidence and were properly accounted for in the RFC to the extent supported by

Plaintiff's treatment history. Moreover, the Court notes that "light work" involves "lifting no more than 20 pounds at a time . . . requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Plaintiff testified that she could lift up to twenty pounds and Dr. Hilty opined that Plaintiff could sit, stand, and walk up to six hours at a time. (R. at 34, 348.) Although Plaintiff testified that she could only stand for twenty to thirty minutes, the ALJ, as discussed below, properly discounted that testimony based on its lack of support in the record. Therefore, the ALJ's omission of the hypothetical claimant's restrictions as to standing, sitting, and lifting is not reversible error, because the record supports the ALJ's finding that Plaintiff's limitations fell within the definition of light work, Plaintiff's credible limitations were accounted for in the question posed to the vocational expert, and the definition of "light work" provided a valid reference point for the vocational expert's conclusion.

### D. Plaintiff's Credibility

Plaintiff argues that the ALJ improperly assessed the credibility of Plaintiff's claims regarding her symptoms. (ECF No. 15 at 35.) "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted). The Court notes that *Kepler* has not been interpreted to require a formalistic factor-by-factor recitation of the evidence. *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."

*Id.*  The Court has already found that substantial evidence in the record supports the ALJ's weighing of the medical opinions and her RFC finding.  The ALJ cited to specific evidence in the record that she relied on to evaluate the credibility of Plaintiff's claims and found that Plaintiff's alleged mental and physical impairments were not supported by her treatment records.  (R. at 10-23.)  Plaintiff has therefore failed to show that the ALJ improperly assessed the credibility of her claims.

### IV.  CONCLUSION

For the reasons set forth above, the Court AFFIRMS the Commissioner's denial of benefits.

Dated this 22nd day of April, 2015.

BY THE COURT:

_____
William J. Martinez
United States District Judge